Good morning. May it please the court. My name is Kim Kralwek and I represent the data surveillance who were subjected to security checks by their employer. I'd like to reserve five minutes for rebuttal. There are two independent tests for compensability under California law, and the check time is compensable under either of the tests. First, we're going to talk about the control test, and then I'll address the suffered or permitted to work test in a few minutes. Under the control test stated in the wage order, time is compensable if the employee is subject to an employer's control. The plain language of the wage order does not ask what happened before the control time. It does not ask why the employer chose to control the time. And I ask, there is at least a case from this court and an intermediate appellate case in California that suggests that a requirement should be read into the wage order, that is, if it's entirely voluntary, then the wage order doesn't apply. And I guess my question is whether there is doubt that California's Supreme Court would follow the lead of our court, which we theoretically don't care about at all, and the intermediate court to read in that sort of a requirement. There certainly is significant doubt about that, Your Honor. The wage order's plain text does not support that as an essential determinative requirement, and it trumps all other evidence of control. The wage order says that time must be controlled. Now, we know that that's broader than simply required time, because 70 years ago the wage order was amended. It used to say that time was compensable if the employee is required to be on duty or required to be on the employer's premises. The IWC had changed that language in 1947, and now the wage order simply states, is the time controlled? Is there an effort to make California's Supreme Court a case of some sort, or a law that we try to pronounce without writing a petition? Do you consider or recite what we've been up to so far? Really, it is the main piece that addresses the control test. But other Supreme Court cases, including Mendiel and Martinez, have recognized that the reason for the 1947 amendment that's so critical here is that the IWC wanted to expand and broaden the definition of compensable time. The IWC wanted to make sure that California law was broader than federal law. So, I think that the reason there's some doubt about whether the California Supreme Court would follow this court's decision on Qatar is, number one, none of the cases so far have addressed these particular facts. But there's also a question, I suppose, even if they were to follow a very broad line between voluntary and non-voluntary, well, let me suggest this, Your Honor. If you look at the facts of the three main cases we have, or really in Qatar and Overton, in those cases, either the employer didn't require any ZPL, or the court found that time was both required and controlled. And one of the reasons they failed, though, was that the plaintiffs in those cases didn't make the argument that we're making. They didn't write down the change, the critical change in the wage order language 70 years ago, so the courts didn't have an occasion to directly address the complaint that we're making now. And I would suggest that if the sufferers in those cases had been slightly different, there would have been a different outcome. So, for example, if the sufferer permitted to work language, also noted at the same time, added at the same time, that language was in the wage order before that portion of it was not revised in 1947. The control test portion was revised. So prior to the revision, the wage order did say that time is compensable if a person is suffered or permitted to work, whether or not required to do so. That portion was unchanged. But there was a critical and substantive change to the definition of the control test. So, if I can address Morelian and Overton. Yeah, I was just going to ask, counsel, are you satisfied that the record in these cases fully developed in terms of the facts for any reviewing court to consider in light of the definition of the class that was agreed to by the counsel before the court certified the class? Well, I think the record is well developed as far as the definition of the class is concerned. I think one area where the trial court, the district court, went astray relates to the sufferer permitted to work test, where the court found that the activity was solicitly passive, which we think contradicts the record, and had a bit of other tribal issues on that point. That would be something that could go back to the district court. But on the control test, I want to talk briefly about the facts of Overton and how to do our Morelian. In Overton, employers didn't require anything. Employees weren't required to drive to work. They weren't required to drive to park in any particular lot. They weren't required to take the shuttle. They weren't required to do any tasks during the shuttle ride. They weren't disciplined for doing or not doing anything. So, there were no additional control in Overton. But if we shift the next focus slightly and resume, what if this employer, Disney, said, okay, you don't have to park in the big tunnel lot, but if you do, you'll be required to take the shuttle. During the shuttle ride, you'll be required to sew costumes for our informers. And not only that, but there will be supervisors standing over you to make sure that you do it correctly, and you won't be allowed to leave the bus until the supervisor satisfies that you've done it correctly, and you can be disciplined for not doing it. Those facts you mentioned would be suffering or permitted to work. I mean, I think you're jumping to the other clause. I don't intend to, Your Honor, and here's why. Judge Paulson, in Roney's name, I have you held that to be compensable in terms of suffering or permitted to work, it has to be activity, it has to relate to the employee's primary job responsibilities, and the hypothetical that I mentioned, sewing costumes is not a part of Disney's job responsibilities. It would be, is there some language in the statute that says that? I mean, I'm not sure why that would be. It seems like if you're suffering or permitted to work, it's some task that helps the employer fulfill its mission, that that's working. I agree. And, Judge, I've seen that Judge Allstep erred in holding that. But where does that stand in that aspect? Your Honor, my only point is that under Judge Allstep's order, it's Roney's name in Reister's case, and the result of it would be that time spent doing tasks like this wouldn't be compensable. No, I don't think so. I don't think one has to go that far in the self-control piece. I have the same issue, I think, with Judge Stranglett in trying to sort of cleanly separate out your control just because, from my point of view, that is the murkier part of the case. And I guess I wanted to just confirm that the only review you're seeking from us is a certification to the California Supreme Court. Is that true? That's one option, Your Honor. I thought that was what the opening protest was to do. We did ask for that. But if you are asking us to do that, what is the question that you would ask us to sort of do for our folks? Your question would be whether the control test includes an additional unstated element from required purchase by the Supreme Court. Now, that would be the question on the control test. And then on the self-reproach work test, the question would be what is the definition of work under California law. Well, I guess it could be stated more broadly. But I guess the reason I'm asking is that if the bottom line is that we would like the California Supreme Court to answer this question, then really the only issue for us is whether there is uncertainty about California law. And we wouldn't have to decide. Beyond saying it seems uncertain. And it seems like you're trying to go all the way to proving that you're right and you're wrong rather than saying it's up for grabs. Well, Your Honor, I think that's a very different kind of argument. It is, but I am arguing that those can be the alternatives. If the Court decides that it doesn't want to certify the questions to the Supreme Court, then, of course, you would reach the merits of these issues. And I'm certainly arguing that we're right on the merits. I believe you're correct that the wage order does not say required. And also, the cases that were relied on by the District Court are distinguishable because they relate to the need of jail time, which is a very different issue than non-jail time, which is what we have in this case. There's not a lot of criminal suits. You know, they can't, if the criminal suit is not paying, are being fired from the district court. That is correct because their actions are being physically, but they're under the immediate supervision of a manager. So say we agreed with you that California law was uncertain and that it would be very helpful for the California Supreme Court to resolve this question as you just raised it. I'm actually struggling with whether this case is a good vehicle for them to answer that question in light of the way the class was defined and to exclude people who, as I understand it, have a bag, for example, because they have diabetes and need to have insulin in their bag. It seems like you've excluded from the class people with the best reason to have a bag, and that makes me wonder whether this is actually a good case to go to the California Supreme Court to answer this question. That issue would be for a future case. This case, the reason we objected to that suggestion by the judge, you talked to the judge, was that actual law doesn't matter. The way Georgia Supreme Court does it, it doesn't matter. That's exactly your point. And so you're asking, you would like the California Supreme Court to answer the question, if you are not required to carry your bag, but you choose to do so, and the employer declines to allow you to leave the premises until you've waited in line and been inspected and all of that, is that compensable time? That's the very question you want answered. That is the question we want answered. And we think that it's the most difficult situation, which leads to this fact that it comes into play. I mean, this is what I'm worried about. Like, maybe the California Supreme Court wants to answer the general question of whether employees have to be subject to bag inspection. But if not, the typical case is employees have multiple reasons. Some of them are doing it just because they want to, and some of them have a real reason they need to. And it seems like the more typical case is a mix of those. And so, why should the California Supreme Court be faced with a case that still has the mix? Well, Your Honor, this case does squarely present a legal question, which is what does the control test need to be under California law? Does the comments of Stevens and Marillion and Inalcatrar apply only to community cases or not? The issue of bag inspection is one that comes up a lot. It does. I noticed. I noticed. I was looking, probably unsuccessfully, for the banks of cases, and the district court is one. It appears that there are a lot of cases revolving around this very issue. Correct. And that's one of the main reasons why I am in the California Supreme Court Review. This is why I asked the question, do you feel that this record is fully developed, does it look to get an answer that would be helpful from the California side? I think it is on the question that we think the case presents, which is what is the definition of the control test? How are non-commute cases adjudicated? It's non-commute, and it's not required. It's not required from the employee's perspective, but it is quote-unquote voluntary on the part of the employee to bring bags  And that's actually the question you wanted to see? It is. It is the question. And so then what will happen? I mean, you said it will be the next case. It deals with the person with diabetes or something. I mean, do we really need the California Supreme Court to do this twice? Your Honor, I think the case with people with diabetes or any issues about, you know, disabilities and other kinds of legal protections to those employees are going to be asserted. This case is one in which these issues are likely to be clearly presented and not. In McCarty, I don't turn it in. He said he had not used the answer. He was going to pick just a matter of whether it's wrong to allow Trevor Irwin to be bled. That is correct. He bled. Those and other cases would never come up, because if the court rules the way we think it should, those cases would all be subsumed. I am honored to have time. I would like to reserve some time for you. Thank you. Good morning, Your Honors. May it please the Court, my name is Julie Dondi. I represent Apple Inc. in this matter. Your Honors, Apple did not require employees to bring bags or personal Apple technology to work. It provided all of the tools and equipment employees needed to do their jobs. But in real life, people bring stuff to work. They bring their iPhones. You want them to have iPhones, I assume. They bring their purse with their comb and their mirror and their lipstick and all kinds of stuff. That's how normal people act in the workplace. It's all the personal things that one would normally bring with them that would otherwise not be available, correct? Not correct, necessarily, Your Honor. And if you look at the record, this is why the district court was so specific in the class certification hearing to narrow the facts as it did in this case. So if you take a look at the excerpts of record and various declarations submitted from class members, some said, I never brought away anything I wanted to bring with me, keys I carried. Other people said, I only brought a laptop or an iPad because I wanted to watch movies on my breaks. A lot of people did say they brought their iPhones, again, to communicate with family members on breaks. It's for personal use. So if you look at the record, this truly is an optional situation. Okay, so if the law doesn't care whether it's optional or required, that won't matter. And that's really the question, the legal question in front of us. It is quite clear that if an employee does choose to bring a bag or an Apple product, they are in the normal parlance under the control of Apple while they wait in line if there's a line while their bag is searched. And if they don't go through that search, they're subject to discipline. It's a requirement if they've chosen to bring an item. And so I'm not sure how that makes any difference to the legal question because if required isn't a part of the equation at all, equally, then all of that is interesting, but it doesn't matter if they're under the control of the employer during that time. Your Honor, again, I agree. I think that's why the district court was specific about and the class certification plaintiffs. Are you agreeing to litigate this case on the assumption that, A, every class member brought a bag voluntarily, and, B, purely for personal convenience? Okay, so why shouldn't we ask the California Supreme Court to look at that because they've never looked at that question. They've never, the California Supreme Court has never dealt with the issue of required or not required. And as far as I know, they've never dealt with the change in the wage order that the opposing counsel was discussing. And, Your Honor, with respect to that, we would like to review those decisions. And I think establishing the California Supreme Court and the California Court of Appeal, as well as the Ninth Circuit, has already directly addressed these issues. So I think it's quite clear that our court thinks there's a required element, and that one of the intermediate appellate courts in California thinks that with respect to commute time. But neither of those decisions dealt with this type of situation. Is that right, Your Honor? So I'd like to start just with the discussion of Verillion. Let's talk about the facts. Let's talk about the ruling that came out of that. Again, Verillion is a transportation situation. The employer said, all employees, you have one way to get to the work fields, and it's going to be on my buses. And that was mandatory and was required. That was a known fact in that case. Right. But that doesn't mean that's the only situation. That's the only situation the courtyards deal with. They were never passed. Of course, two months in this case. Two parts to that Verillion analysis showed. The employees drew their claim that while on the bus, they were foreclosed from a lot of personal activities they could do. So they could listen to music, they could read, but they couldn't do anything they wanted. If they drove themselves, maybe they were on the air and subway, maybe they dropped their kids off at school. So the California Supreme Court definitely said there's a two-part test to this control theory. Number one, they said, we agree, it's not suffered or permitted to work because they're riding the buses, and they're not doing what they would otherwise do when in the field. They're just passively riding on the bus. So it is not suffered and permitted to work, but is it work under the control test? In our brief, we submitted many, many, many quotes to the court where the California Supreme Court mentioned the required element. I want to focus on two. The first is from page 588 of the decision. There, the court said, we emphasize that employers do not risk paying employees for their travel time merely by providing them transportation. Time employees spend traveling in transportation that an employer provides but does not require its employees to use may not be compensable. It may not. They're not deciding it. It may not be compensable. They're not faced with that issue. They're saying, that's how I read that. They're just not deciding their case. And I understand that you're not requesting that this court certify to the California Supreme Court, but if we were going to, what is the question that you would suggest needs to be certified? I believe that the California Supreme Court has already established that the control test has two elements. One, that the activity is required, and two, that the employer exercise control, a sufficient amount of control. And, again, Your Honor, let's put it in another context. Let's talk about on-call time. Excuse me. It would be helpful to all of us, I think, if you could answer Judge Marshall's question, which is, what is the question? If we were to certify a question with the California Supreme Court, how would you suggest that it be produced? I apologize. I thought I had answered that. The question would be, is the control test a two-part test, such that the employer has to both require the activity and exercise a sufficient amount of control over the employee during the activity? Well, here there's no question that there's control. You have to go to a certain place, and you're being inspected by management. So that piece of control is clearly there. So really, the only question is, rather than the fact that the condition that causes the inspection, do you believe that the voluntariness of that makes any difference on the employee's part? That's correct. And I would point out that in Meridian, in another location, they said if it's optional, so they stated in the opposite direction, this is page 594. In deciding Royal Bus Company thanks us for this travel and waiting time, we nonetheless remain optimistic that employers will not be discouraged from providing free transportation as a service to their employees. As we have emphasized throughout, Royal required plaintiffs to ride its buses to get to and from the fields, subjecting them to its control for the hours work definition. However, employers may provide optional free transportation to employees without having to pay them for their travel time, as long as the employers do not require employees to pay for it. Okay, so the analog here would be if Apple didn't require the plaintiffs to stand in line and be inspected, but they would optionally provide free opportunity to be inspected. I guess I just don't see it. I guess I just can't read it in the way that you're reading it, or at least I think it's ambiguous. And that concerns me because this is obviously an issue that comes up a lot because there is a lot of other litigation pending raising this same question. And it just seems that it would be prudent to ask the state court to interpret state law. And I don't understand why that's a concern to you. Is there an answer to your question? And then do you think this record is fully developed just in terms of the definition of the class that was agreed to before the trial judge to even certify in this case? I do believe that the record is fully developed. The plaintiffs have agreed to litigate the case on established facts. That is that employees were not required for any reason, not by Apple, not by the nature of the work, not by any life necessity, to bring a personal Apple technology. They did so voluntarily and purely for personal convenience. And so I'd like to return, Judge Graber, to your analog question. I think if we look at the Overton decision, we see where the analog winds up. In the Disney case, Disney did not require employees to drive to work. If they chose to do so, however, there was a requirement. There was control. You must park in the remote lot that's one mile away. The employee said, because we have to park in that remote lot, we have to arrive substantially earlier, so we would like to be paid for the time it takes us to get from that remote lot to the park entrance. And the California Court of Appeals, again, applying Marillion and the two-part test that was established there between required and controlled, said you are not entitled to compensation because Disney didn't require you to drive in the first place. But there is a difference, and it is potentially the matter, and there may be other differences, too, that may matter to the California Supreme Court, which has never looked at that question. One is the difference between traveling to and from work and being at work. The other is the difference between the level of control, because if someone comes from the remote parking lot, if they felt like wandering somewhere else to go pick flowers, they could do that. These folks, once they take the option of bringing back to work, they are required to be truly under the control of Apple during that inspection process. And I guess I just feel like we're guessing a lot about what the California Supreme Court might do with what you're just asking. If the Court is inclined to ask the California Supreme Court, I'm not going to stand in the Court's way. I'm just explaining that I do feel as though the California Supreme Court and Court of Appeal and the Ninth Circuit have already addressed this issue and confirmed it's a two-part test. Can I ask you what your response is to the textual, historical issue that counsel has raised about the revision of the wage order from awarding the hand requirement to awarding the use-only control? Yes. If you look at the historical context, there's a number of authorities cited in the papers that explain this evolution of the law. Originally, they were both on a par with federal law in the concept of suffering and permitting to work in the requirement element. When federal law went to the Portal to Portal Act and said, we're going to exclude certain preliminary and post-liminary activities from the definition of hours worked, California went in the opposite direction. They said federal law is getting looser. We're going to get a little bit tighter. And so they didn't just change the word required. They redefined the word entirely. And they did that in 1947. The California Supreme Court decided we're really in 2000. And we're talking 53 years after this. Right. They didn't really address that historical aspect. I would like to point out, Your Honor, that even when plaintiffs say this change from required to control means it doesn't have to be required anymore, they provide dictionary definitions of the word control in their brief in this room. And they say control is to exercise authority or dominating influence over, direct, regulate. When you're going to, quote, require somebody, every time you're directing them to do something, you're regulating that they do something. You're dominating them. You're requiring them to do it. So what it said is here what they're required to do is stand in line and get inspected. See, it may exercise a choice purely for personal convenience. And this is where the facts that the plaintiffs agreed to litigate the case, Your Honor, just as in the recent Waterstein case that was before the Ninth Circuit about a month ago, the same idea. An employer offers health insurance benefits. Nobody's required to sign up for them. But if you do sign up for those benefits, you're going to have to fill out paperwork. You're going to have to enroll. You're going to have to pick your plan. And then one step further in the Waterstein case, if they wanted to reduce their premiums, they would have to participate in a wellness program, which meant they had to submit to health screenings. Now, these are requirements that you have to follow if you make the first choice, and the first choice is optional. And that's what Merlion said. If it's an option to ride on the bus, it doesn't matter. They want you to choose to get on that bus. You can't drive your kids. You can't run your errands. You're going to be limited in your personal activities because you chose to do them. That was your tradeoff. We see the same thing here. Employees know before they come to work, I've got school after work today. I have a choice. I can leave my backpack full of books at home, or I can take it to work. If I take it to work, I know that it will be subject to check. I can decide what's more convenient for me. Is it to leave that backpack at home, or is it to take it to work knowing that someone is going to look at it when I leave? And it's all throughout the declarations. They did it with clothes. They did it with friends after work. They did it with laptops and iPads for homework or for watching movies. These were choices they had up front, and they knew if they made that choice, just like in Marillion, they'd be stuck on that bus. Just like in Overton, they'd have to park a mile away. Just as in El Cantar, they'd be subject to limitations when they drove the employer-provided vehicle home. They knew those were the consequences. They still made the choice, and that's why under Marillion, Overton, El Cantar, Waterston, and Boa, it can't be work because employees can't voluntarily choose to do something purely for their own benefit. Just for the fit's sake, this is it. And that's it. But you owe me money for it. Thank you, counsel. Thank you. Time has expired. Can we switch? I'm sorry. You have six hours remaining. Thank you, Your Honor. I think one way to frame the question is the court decides to refer it to the Supreme Court. It would be to say, does the wage order, in addition to mandating control, also have required as an additional element, and can conduct be deemed non-required simply because there's a pre-activity choice? I'm telling you what the Supreme Court was holding because there's an attitude, as Your Honor said, employers are required to go through these back checks. So that's a nuance, and that might be a helpful way to frame the question. I'd like to point out also that in Overton, Section 6 says that employees were not required to park in any particular lot, so there was no requirement whatsoever in Overton. I would also like to point out that the court is, Your Honor, is correct in your interpretation of Marillion. The Supreme Court simply did not address the specific issue that's raised in this case, and I think if the facts of Marillion had been different, for example, if the workers were required to clean farming implements during the bus ride, they could have found the control dissatisfied without ever reaching this preliminary question about whether the bus rides were voluntary, which leads to my point concerning Alcantara, which is that Alcantara really were both commute time cases. In Alcantara, the very first legal principle stated is that commute time in a company vehicle is presumed to be non-compensable, and the court discussed Marillion, which is another commute time case, where the court went out of its way to make sure that it would be clear that an employer is not going to be responsible to pay for time just by providing transportation. But if there were other controls exercised during the time as there are in this case, I think the outcome of those decisions would have been different. And also in Alcantara, immediately after the court discussed Marillion, the court then stated this principle of law. In terms of commute time, the language says this employer would have to show that his commute time was both required and controlled. The reason is that most of the time, commute time, general commute time, is not controlled. In Alcantara, the employees were allowed to sleep and read during the rides. So there were very low levels of control during the ride. Yes, so if you have exceeded your time, if you would like one sentence to wrap up, you may. My final sentence would be that the California Supreme Court is not as widely addressed in this issue, and that the issue is right to be referred to the court. Thank you very much. Thank you, Cassidy. We have one more case on the argument targeting United States v. Stewart Shelley.
judges: Graber, Friedland, Marshall